**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FELICIA L. ROSS,** | ) | **Case No.  1:09 CV 2220** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **ITT CLEVELAND MOTION CONTROL,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

        Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion" or

"Motion to Dismiss") (**ECF No. 10**.)  *Pro Se* Plaintiff Felicia L. Ross has brought a Title VII

employment discrimination action against her former employer, Defendant ITT Cleveland

Motion Control ("ITT"), and her former supervisors, Defendants Cathy Rose, Dale King and

Curtis Pray.[1]  Plaintiff alleges that Defendants created a hostile work environment for her based

on her race, gender and religion, and that the intolerable environment caused her to resign.  For

the reasons to follow, the Motion is **DENIED** with regard to the sexually hostile environment

claim against Defendants Cathy Rose, Curtis Pray and ITT.  The Motion is **GRANTED** with

regard to all other claims and parties.

---

        [1]The Court previously dismissed *sua sponte* Defendants Ted Mitchell and Jeff Keener,
Plaintiff's co-workers, for reasons explained *infra*, at 3 n.2.

# I.

In an earlier Memorandum of Opinion and Order, the Court summarized the following

complaint allegations:

> Ms. Ross is an African American hired by ITT Cleveland Motion Control.
> She does not describe the position for which she was hired, but claims she
> initially worked for Dale King who "has a history of racial discrimination."  At
> that time, she was being harassed by a co-worker [George Baka] and reported it to
> Mr. King.  He laughed and suggested she transfer to another area.  Believing this
> was her only option, she conceded, despite her success in that department.  She
> was later told during her evaluation by Mr. King that the men in her former
> department complained she did not like men.
>
> Under the subsequent supervision of Cathy Rose, the harassment allegedly
> continued with the encouragement of Mr. King, who supervised Ms. Rose, Mr.
> Keller and Mr. Mitchell.  Ms. Ross claims it was company policy "for all
> employees to place orders for new tools."  (Compl. at 1.)  Plaintiff, however, was
> given "hand me down dirty tools from [Rose's] home.  Id.  Ms. Rose allegedly
> treated Ms. Ross with disdain because of her race and religion.  Unlike other
> employees, Ms. Ross's actions were constantly monitored by her supervisor to the
> point of harassment.  She alleges that when Ted Mitchell was hired he sexually
> harassed her on numerous occasions.  She claims her complaints to Ms. Rose
> were ignored.  Instead, Ms. Rose allegedly encouraged Mr. Mitchell's actions as
> well as the racial slurs directed at plaintiff by Jeff Keener.
>
> Another acting supervisor, Curtis Pray, also allegedly caused plaintiff's
> life to be a "living hell" at ITT.  He was loud and disrespectful.  A friend of the
> other defendants, Mr. Pray contributed to the hostile work environment within
> which Ms. Ross worked.  Her Title VII claims suggest the degree to which the
> harassment escalated was also a result of her refusal of sexual advances.  Ms.
> Ross alleges the level of hostility and intimidation escalated to the point she was
> plunged into depression and on the verge of a nervous breakdown.  Eventually,
> she felt forced to resign.

(ECF No. 4, at 1-2.)

The resignation, which Plaintiff terms a constructive discharge, took place on February 5,

2009.  On February 17, 2009, she filed a dual charge of employment discrimination in the Ohio

Civil Rights Commission ("OCRC"), which forwarded a copy of the charge to the Equal

Employment Opportunity Commission ("EEOC").  (ECF No. 12-1, at 14.)

On September 25, 2009, Plaintiff, representing herself, filed the instant Title VII action

alleging employment discrimination, based on her race, gender and religion, against Defendants

ITT Cleveland Motion Control, supervisors Curtis Pray, Cathy Rose and Dale King, and co-

workers Ted Mitchell and Jeff Keener.  (ECF No. 1.)  On November 2, 2009, after conducting a

preliminary review of the *pro se* complaint under 28 U.S.C. § 1915(d), the Court issued a

Memorandum of Opinion and Order *sua sponte* dismissing Defendants Ted Mitchell and Jeff

Keener for reasons explained therein,[2] and directing the Clerk's Office to forward the

appropriate documents to the U.S. Marshal for service of process on the remaining Defendants.

(ECF No. 4.)   On November 30, 2009, the remaining Defendants (Rose, King, Pray and ITT)

filed the pending Motion to Dismiss.  (ECF No. 10.)  Defendants argue that (1) Plaintiff has

failed to state a claim under 42 U.S.C. § 1983, (2) Plaintiff has failed to exhaust her

administrative remedies under Title VII, and (3) the alleged facts do not support a Title VII

claim.  (Id.)  Plaintiff has filed an opposition brief with attachments (ECF No. 12), and

Defendants have filed a reply brief (ECF No. 13).  These issues, having been fully briefed, are

ripe; and the Court, having reviewed the briefs and the record, is prepared to issue its ruling.

## II.

Although Plaintiff stated, in the Civil Cover Sheet accompanying the Complaint, that she

is bringing this action under 42 U.S.C. § 1983, she is obviously <u>not</u> bringing her claims under

---

[2]The Court found that Defendants Ted Mitchell and Jeff Keener, as Plaintiff's co-workers, must be dismissed from the action because, as a matter of law, they do not qualify as employers subject to suit under Title VII.  (See ECF No. 4, at 3-4 (citations omitted).)

that statute since she has not alleged a violation of her constitutional rights by state actors.  In fact, the Court has already construed the complaint as alleging Title VII claims only.  (See generally ECF No. 4.)  To the extent Plaintiff purports to bring a claim under 42 U.S.C. § 1983 based on the allegations in the complaint, that claim is hereby dismissed with prejudice.

### III.

Next, Defendants argue that Plaintiff's Title VII action should be dismissed for failure to exhaust her administrative remedies.  The exhaustion of administrative remedies is a condition precedent to filing a Title VII action in court.  *Williams v. Northwest Airlines, Inc.*, 53 Fed.Appx. 350, 351 (6th Cir. Dec. 18, 2002) (citations omitted).  The purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation."  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  The failure to timely exhaust administrative remedies is an appropriate basis upon which to dismiss a Title VII claim. *Williams*, 53 Fed.Appx. at 351.

To exhaust administrative remedies, a plaintiff must file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state agency, within 300 days.  *See id.* at 351-52 (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)).  Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has 90 days to file a civil action. *See id*. at 352 (citing 42 U.S.C. § 2000e-5(f)(1)).  These time limits do not constitute a jurisdictional prerequisite to filing a civil action, but are subject to waiver, estoppel and equitable tolling.  *Williams*, 53 Fed. Appx. at 352 (citing *Zipes v. TWA*, 455 U.S. 385, 392-98 (1982)).

-4-

In apparent response to Defendants' contention that Plaintiff failed to exhaust her administrative remedies, Plaintiff attached to her opposition brief a copy of the charge she filed in the OCRC on February 17, 2009.  (ECF No. 12-1, at 14.)  She did not, however, attach a copy of her EEOC charge or right-to-sue letter.  Accordingly, the Court issued a Show Cause Order requiring her to provide such documentation.  (ECF No. 14.)  On January 20, 2010, Plaintiff filed a document entitled "Dismissal and Notice of Rights" which the EEOC sent to her on August 29, 2009.  (ECF No. 15.)  Therein, the EEOC stated that it was closing the EEOC proceeding because it  adopted the findings of the state agency that investigated Plaintiff's charge (presumably, the OCRC), and notified Plaintiff of her right to file a civil action in federal or state court within 90 days of receipt of the letter.  (Id. at 1.)  Plaintiff filed the instant action less than one month later.

Plaintiff neglected to file, however, a copy of her EEOC charge.  Hence, the Court issued a Second Show Cause Order directing Plaintiff to file, by a date certain, a copy of the EEOC charge upon which the Dismissal and Notice of Rights was issued.  (ECF No. 16.)  The Court stated, in pertinent part:

> Because the administrative charge creates the parameters of the civil action that follows, the Court needs to review the EEOC charge before issuing its decision. . . . If Ross fails to make such filing in the time allotted, the Court will assume that the contents of the EEOC charge are the same as the contents of the OCRC charge, and will construe the scope of the instant civil action based on the contents of the administrative charge she filed with the OCRC.

(Id. at 4.)

While this latest Order was pending, the Court contacted the EEOC to see if it could obtain a copy of the charge Plaintiff had filed there.  Counsel for the EEOC informed the Court that, in the State of Ohio, all administrative charges of this type of employment discrimination

-5-

are "dual filed."  That means that, if a complainant files a charge of employment discrimination in the OCRC, the OCRC automatically forwards a copy of the charge to the EEOC which, in turn, opens up a file and gives the charge an EEOC number.  However, the EEOC allows the OCRC to conduct the investigation.  Counsel for the EEOC stated that that is precisely what occurred in this case, and forwarded to the Court a copy of Plaintiff's OCRC charge which was used to open up Plaintiff's EEOC file.  Thus, the EEOC charge is identical to the OCRC charge.  To determine which claims Plaintiff has exhausted then, the Court must compare the allegations of the complaint with the contents of the EEOC charge.

Reviewing the complaint allegations as supplemented by the allegations in the opposition brief liberally (collectively, "the complaint allegations") and then summarizing them, Plaintiff alleges that the discrimination at ITT began when co-worker George Baka started sexually harassing her.  When she reported his harassment to then-supervisor Dale King, his response was to transfer her to another department rather than document, investigate and report her allegations to management.  She then claims that co-worker Ted Mitchell started sexually harassing and stalking her.  When she reported his harassment to then-supervisor Cathy Rose, Rose failed to document, investigate and report her allegations to management.  Worse yet, Rose encouraged and exacerbated Mitchell's harassment of Plaintiff because Rose was envious of Plaintiff's work ethic and high regard among employees and management and because Plaintiff is African American.  Plaintiff claims that Mitchell's harassment continued after Plaintiff was directed to report to Curtis Pray instead of Cathy Rose.  When Plaintiff reported Mitchell's harassment to Curtis Pray, who was long aware of the situation, he failed to document, investigate or report the situation to management.  She finally reported Mitchell's harassment to the company president,

-6-

Wayne Foley, to no apparent avail.  Plaintiff generally alleges that Defendants King and Pray were avowed racists who tolerated racism in their subordinates and were motivated by racism in their conduct towards her.  Plaintiff alleges that the hostile environment caused her to seek medical help, threw her into a depression and, ultimately, motivated her resignation.

Turning to the EEOC charge, in the area provided to write a brief but detailed statement of the facts Plaintiff believed indicated an unlawful discriminatory practice, she responded:

> I am African American and female.  I had been employed by Respondent since November 2006, most recently holding the position of Assembler.  Since becoming my supervisor Cathy Rose, White, had subjected me to various forms of harassment.  For example:
>
> -She ignored my complaints that co-worker Ted Mitchell was subjecting me to acts of sexual harassment (most of these acts took place within the past six (6) months).
>
> -She would constantly follow me around scrutinizing my job performance.
>
> Because of this on-going harassment, I was forced to resign my position.

(See ECF No. 12-1, at 14.)  When asked what type of discrimination formed the basis for her charge, Plaintiff checked the boxes for "race/color" and "sex;" she did not check the box for "religion."  (Id.)  When asked to describe the discriminatory action to which she was subjected, Plaintiff checked the boxes for "forced to resign" and "harassment/sexual harassment."  (Id.)

The general rule in the Sixth Circuit is that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Dixon v. Ashcroft,* 392 F.2d 212, 217 (6th Cir. 2002) (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)).  In adopting this rather liberal "expected scope of investigation test," the Sixth Circuit recognizes that administrative charges of discrimination are often prepared by laypersons without the assistance of counsel – and the Title

-7-

VII actions that follow should not be limited by the failure of a plaintiff to attach the correct legal conclusion to its claims, conform to procedural technicalities, or use precise wording that might otherwise be required in a formal pleading.  *Id.* (citing *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971); *Davis v. Sodexo, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).

As such, Plaintiff's failure to check the box for religion discrimination is not necessarily dispositive of whether she exhausted her religion discrimination claim against Defendants.  *Bray v. Palm Beach Co.*, 907 F.2d 150, 1990 WL 92672, at *2 (6th Cir. Jun. 29, 1990).  Rather, it is the facts alleged in the body of the charge, rather than the boxes marked, that primarily determine the scope of the charge.  *Id.*

The EEOC charge alleges that Plaintiff was the victim of a sexually (and possibly racially) hostile work environment that began when Cathy Rose became Plaintiff's supervisor, and is attributable to Rose and Ted Mitchell.  There is no mention, or suggestion, of discrimination against Plaintiff based on her religion.  Accordingly, the Court finds that Plaintiff has failed to exhaust her administrative remedies with regard to her Title VII religion discrimination claim.[3]

Plaintiff's administrative charge does not identify, either overtly or implicitly, supervisor defendants Dale King and Curtis Pray.  The complaint allegations regarding Dale King, however, discuss the way he mishandled Plaintiff's report that George Baka was sexually harassing her and King's subsequent transfer of her to another department.  King's conduct long

---

[3]Even if Plaintiff had properly raised and exhausted that claim, the Court would dismiss it under Rule 12(b)(6) because the only references to religion in the complaint are conclusory legal assertions couched as factual allegations – and  the only references to religion in the supplemental allegations describe Plaintiff's personality and comportment.

precedes, and is unrelated to, the allegations in the administrative charge regarding Cathy Rose and Ted Mitchell.  There is case law that would allow a plaintiff to raise a claim in a Title VII action that is like or related to conduct alleged in an administrative charge.  *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303 (11th Cir. 2000) (holding that Title VII action alleging discriminatory denial of access to promotional exams, reclassifications and transfers was related to administrative charge of discrimination in promotions and job assignments); *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992) (holding that Title VII action alleging discrimination in training related to charge of discriminatory refusal to promote); *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) (holding that administrative charge of intentional national origin discrimination in failing to promote encompassed a civil disparate impact claim for failure to promote).  However, the Court can find no case law that would allow a plaintiff to raise a claim in a Title VII action that is unrelated to and precedes the conduct alleged in the administrative charge.  Furthermore, Title VII authorizes civil actions against the "respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1).  Thus, parties not named in the administrative charge are generally not subject to suit in the subsequent Title VII action.  *See, e.g., Knafel v. Pepsi-Cola Bottlers, Inc.,* 899 F.2d 1473 (6th Cir. 1990).  For these reasons, the Court finds that Plaintiff has failed to exhaust her Title VII claims against Defendant Dale King, which claims are hereby dismissed.

The complaint allegations involving Defendant Curtis Pray are a different matter.  In the complaint, Plaintiff alleges that she was instructed to report to Curtis Pray after her supervision by Cathy Rose was terminated.  Plaintiff alleges that Mitchell's conduct continued after the change in supervision and, when she complained about Mitchell's harassment to Pray, he was

completely unresponsive.  "[O]n November 17th plaintiff asked Curtis Pray, did he speak to the

human resource about Mitchell's, stalking the plaintiff on November the 7th 2008 from another

location in the company.  It was exactly 10 days after the report to Curtis Pray, plaintiff ask why

so long had her supervisor not report the complaint to human resource?  Pray, responded I just

did not get around to it."  (Opp. Br. at 16.)  The complaint allegations also assert that Pray had

long witnessed the sexually offensive conduct directed toward Plaintiff by co-workers Ted

Mitchell and Jeff Keener – making his failure to act on her report even more noteworthy.  As

previously explained, a plaintiff cannot generally name a party in a Title VII action that was not

identified in the EEOC charge.  However, courts have held that administrative charges should be

liberally construed and, under certain circumstances, an action can be brought against unnamed

parties.  *See, e.g., Given v. Greyhound Lines, Inc.*, 616 F.Supp. 1223 (S.D. Ohio 1985) (declining

to dismiss in a Title VII action two supervisors who were not named in an EEOC charge);

*Wright v. Manatee County*, 717 F.Supp. 1493, 1497 (M.D. Fla. 1989) (declining to dismiss

county commissioners in Title VII action who were not named in the EEOC charge because they

were within the scope of the EEOC investigation which could reasonably grow out of the

charge); *Wangler v. Hawaiian Elec. Co., Inc.*, 742 F.Supp.1458 (D. Hawaii 1990) (plaintiff's

failure to name former supervisor and co-worker in EEOC charge did not bar Title VII action

against them where their conduct formed the basis of the conduct asserted in the charge);

*Wrighten v. Metropolitan Hosp., Inc.*, 726 F.2d 1346 (9th Cir. 1984) (Title VII claims can be

brought against supervisors not named in an EEOC charge as long as those persons were

involved in the acts giving rise to the charge).  The Court finds that a reasonable investigation of

Plaintiff's administrative charge targeting Mitchell and Rose's harassment would have

-10-

undoubtedly uncovered the fact that Curtis Pray, who succeeded Rose as Plaintiff's supervisor, also ignored Plaintiff's complaint to him regarding Mitchell's harassment.  Accordingly, the Court concludes that Plaintiff has exhausted her administrative remedies with regard to her Title VII claim against Curtis Pray.

Because the EEOC charge complains about a sexually, and possible racially, hostile work environment at the hands of Defendant Cathy Rose, the Court concludes that Plaintiff has exhausted her administrative remedies with regard to the Title VII race and discrimination claims against Cathy Rose.

## IV.

The Court must next determine whether, under Rule 12(b)(6), Plaintiff has failed to state a Title VII claim for a sex- and/or race-based hostile work environment against Defendants Rose, Pray and ITT.  Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Discrimination based on sex or race that creates a hostile work environment violates Title VII.  *Baugham v. Battered Women, Inc.*, 211 Fed. Appx. 432, at *5 (6th Cir. 2006) (citations omitted).  To make out a race-based or sex-based hostile work environment claim under Title VII, the plaintiff must show: (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her sex or race, (4) the harassment created a hostile work environment, and (5) employer liability.  *Ladd v. Grand Trunk Western RR, Inc.*, 552 F.3d 495, 500 (6th Cir. 2009) (citing 42 U.S.C. § 2000e *et seq.*).

-11-

Importantly here, the plaintiff must show that, but for her gender or race, she would not have been the object of harassment.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (citation omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  "The first step in testing the sufficiency of the complaint is to identify any conclusory allegations."  *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009) (citing *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).  550 U.S. 544, 555 (2009)).  "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 120 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' "  *Simpson*, 2009 WL 2591682, at *1 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 550).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  More is required than "unadorned, the-defendant-unlawfully-harmed me accusations."  *Id*.

The complaint allegations paint the following picture.  Ted Mitchell, a temporary employee hired by ITT, sexually harassed Plaintiff.  He would stand close to, flirt with, and make sexually offensive comments to her.  He would stare at her constantly when he worked

-12-

nearby, and he would stalk her when he didn't – whether by coming to her department and just standing there and staring at her (over ten times on one day), standing behind shelves where she was working and clear his throat so she would see him, or staring at her through a mirror on a wall where he knew she could see him.  Plaintiff confronted Mitchell directly about his behavior and, when he wouldn't stop, she was forced to take a different route to her work station every day to avoid him and put up barriers at her work station to avert his glare.  Everyone with whom she worked was well aware of this harassment, including the supervisors to whom she reported the conduct.  The harassment intimidated and scared her, forcing her to seek medical help and eventually leave her employment.

Plaintiff complained about Mitchell's sexual harassment to supervisor, Cathy Rose, who not only failed to investigate or report the conduct to management, but encouraged and facilitated the conduct.  Although Plaintiff asserts her "belief" that Rose engaged in this behavior because Plaintiff is an African American woman, the factual allegations tell another story.  Plaintiff alleges that Rose was jealous of her.  Plaintiff states that she could perform any task that was asked of her, while Rose couldn't do much "except the dept. she worked in for over 9 years+."  (Opp. Br. at 3.)  On at least one occasion, the president of the company, in Rose's presence, complimented Plaintiff's work ethic and professional appearance (Plaintiff wore skirts and heels, Rose wore sweatshirts and steel-toed boots) and observed that Plaintiff was a good role model and example to the rest of the company.  When Plaintiff and Rose applied for the position of supervisor, however, Rose was promoted and became Plaintiff's immediate boss – and that is when "all hell broke loose."  (Opp. Br. at 10.)  Plaintiff alleges that Rose's "jealousy caused her to not focus on her duties as a supervisor.  It caused Cathy Rose, to be very envious

of the plaintiff, which caused her to be very insecure with her position toward the plaintiff as a Supervisor."  (Id. at 2.)  Plaintiff asserts that she was a "big threat" to Rose who "hated her" because she "was well liked by many employees and co-workers, she was a great employee and a very hard worker."  (Id. at 3.)  As a result of this rivalry, Rose used her position as Plaintiff's supervisor as a "bullying weapon" with the goal of driving Plaintiff to quit – and she stepped up her bullying efforts when Plaintiff failed to quit.  Rose would try and find fault with Plaintiff's work, give Plaintiff mean and dirty looks every day, and monitored Plaintiff's every movement (including during lunch time, breaks, when she visited the ladies room, and when she went to the office area for work-related business).  (Id.)  Rose even documented Plaintiff for putting up barriers to avert Mitchell while encouraging Mitchell to stalk Plaintiff.  Even after Rose was no longer Plaintiff's supervisor, she continued the hostile work environment.  Rose had the office secretary page her whenever Plaintiff entered the office area of the company, or when Plaintiff's daughter would come in to meet Plaintiff.  (Id. at 11-12.)  Rose would tell Curtis Pray that Plaintiff was late when she did not see her arrive at the office, even though she knew that Plaintiff took different routes to her work station to avoid Mitchell.  When Plaintiff reported Mitchell's sexual harassment to Curtis Pray, who was well aware of Mitchell's conduct prior to becoming Plaintiff's supervisor, he, too, did nothing.  When she reported it to the company president, the conduct apparently did not stop.

The Court finds that these allegations plainly state a claim for a sexually hostile work environment in violation of Title VII against Defendants Cathy Rose, Curtis Pray and ITT.  It is noteworthy that the complaint, as supplemented by the opposition brief, only alleges that Plaintiff reported Ted Mitchell's sexual harassment to management.   Plaintiff never alleges that

-14-

she reported anyone's racial harassment to management.  The Court finds that Plaintiff's conclusory, factually unsupported belief that Rose harassed her because she was African American is an insufficient basis upon which to state a race-based hostile environment claim against Cathy Rose and ITT.  *Iqbal*, 120 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. The Court finds that Plaintiff's conclusory allegations regarding Curtis Pray's alleged racism and his tolerance of racially offensive remarks in the workplace is insufficient to state a race-based hostile environment claim against Curtis Pray and ITT.  *Id*.

Accordingly, pursuant to Rule 12(b)(6), the Court dismisses the Title VII race discrimination claims for failure to state a claim for which relief can be granted.

### V.

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's Complaint (**ECF No. 10**) is **DENIED IN PART**, and **GRANTED IN PART**.  The Court **DENIES** the Motion with regard to the Title VII sexually hostile environment claims against Defendants Cathy Rose, Curtis Pray and ITT.  The Court **GRANTS** the Motion with regard to all other claims and parties.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster    March 2, 2010*
**Dan Aaron Polster**
**United States District Judge**

-15-